

U.S. Department of Justice

Tax Division
*Northern Criminal Enforcement Section*

|  |  |
|---|---|
| JHP:AMCherry<br>F. #2015R01974<br>DJ 5-52-20340<br>CMN 2018201161 | *P.O. Box 972*<br>*Washington, D.C. 20044* |

June 20, 2021

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Jose Andreu
                  Criminal Docket No. 20-45 (EK)

Dear Judge Komitee:

      The government submits this sentencing memorandum with respect to defendant Jose Andreu ("Andreu"). The defendant engaged in a conspiracy to trick the IRS out of millions of dollars by submitting false tax returns for himself and recruiting others to do the same. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the applicable U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range. As referenced in the plea agreement, the defendant has stipulated to an adjusted offense level of 16 which carries a range of 21 to 27 months of imprisonment. The defendant's sentencing is scheduled for July 1, 2021, at 2:30 p.m.

I.      Background

      From May 2011 through April 2019, defendant Andreu, and his co-defendants Ricardo Andujar, and Richard Barker, conspired to defraud the Internal Revenue Service in order to obtain tax refunds for themselves and others that they were not entitled to receive. Each defendant filed false tax returns under their own names that reported fake interest income and fictitious federal tax withholdings. The defendants also recruited others to file similarly fraudulent tax returns that were either filed by mail or filed electronically through one of Barker's tax return preparation businesses. The intended loss for the conspiracy is $2,125,872. In addition to submitting nine fraudulent tax returns in his own name, Andreu recruited John Doe #2 to submit tax information to Barker for the purpose of filing a fraudulent 2012 Form 1040 that claimed a false refund of $77,484. This particular refund was not issued, but the IRS issued $181,137 of other fraudulently claimed refunds in the scheme directly to Andreu.

      In support of the scheme, Andreu and his co-defendants submitted false Forms 1099-OID (Original Issue Discount) to the IRS by mail along with other frivolous correspondence

containing tax defier jargon in an effort to convince the IRS to release tax refunds that they were not entitled to receive. The fabricated Forms 1099-OID showed fake interest income in amounts associated with the defendants' respective consumer debt, such as credit card balances, and mortgages. The fictitious federal tax withholdings claimed on the Forms 1099-OID, and ultimately on the tax returns, consistently and preposterously represented approximately 90% of the fictitious interest income reported. These false figures were included on the defendants' respective Forms 1040 and 1040X as taxable interest and federal income tax withheld, which resulted in fraudulently calculated refund claims ranging from approximately $30,000 to $350,000. As a result, the IRS issued refunds ranging from $40,463 to $149,760. A total of $464,252 was issued directly to the co-defendants and at least one other taxpayer, Jane Doe #1, who was recruited to participate in the scheme.

The IRS sent letters to each defendant which notified them that their submissions were deemed frivolous and warned them of frivolous filing penalties. Despite those warnings, Andreu ad his co-defendants each continued to file multiple fraudulent returns and correspondence containing tax defier jargon in support of their efforts to fraudulently obtain refunds to which they were not entitled to receive. The frivolous correspondence from each defendant contained similar language and structure. One of Andreu's letters, signed and notarized with Andreu's thumbprint, was mailed to the IRS with a return address noted as "in care of co-defendant Ricardo Andujar."

Andreu filed the first and last fraudulent tax returns in the scheme. Nine of the 27 tax returns submitted in the scheme were under Andreu's name. Bank records and IRS documents show that Andreu was issued refunds based on at least two of the false claims**:** $49,672 for the 2010 tax year and $133,388 for the 2013 tax year.[1] In addition, after several notices and other attempts by the IRS to communicate with Andreu, IRS Revenue Officer Holly Nolan visited Andreu's residence on January 9, 2014. RO Nolan informed Andreu that the 2010 Form 1040 was a frivolous claim, that Andreu was not entitled to the resulting refund, and that Andreu must pay the fraudulently obtained refund back to the IRS. Andreu responded by stating that RO Nolan must present him with an affidavit proving that he owed the tax liability. Undeterred even by an in-person visit from an IRS revenue agent, Andreu continued with the scheme and filed three fraudulent tax returns after this encounter.

II.     Guidelines Calculation

The government's Guidelines calculation, as set forth in the plea agreement, is as follows:

Base Offense Level:                                                                                           22
Tax Loss of $2,125,872, between $1,500,000 and $3,500,000

---

[1] A portion of the $135,399 refund issued for 2013 was applied to previous tax due for tax years 2007 to 2012. The remaining funds were used to pay for vacation timeshares, to make car payments, and for general living expenses while Andreu also received New York State unemployment benefits.

2

(U.S.S.G. §§ 2T1.9, 2T1.4, 2T4.1(I))

| | |
|---|---|
| Less: Intermediate Role Adjustment (U.S.S.G. § 3B1.2) | -3 |
| Subtotal: | 19 |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Total Adjusted Offense Level: | 16 |

The government and Probation calculated the same adjusted offense level of 16 by different means. The tax loss set forth by Probation for sentencing purposes and the intermediate role reduction differs from that set forth in the plea agreement. Probation indicated that Andreu is accountable for an intended tax loss of $621,352, which includes the false refunds claimed in his own name and that of John Doe #2 who Andreu recruited to participate in the scheme. See PSR ¶¶ 10 & 11. Probation also indicated that neither a mitigating nor an aggravating role adjustment is warranted. See PSR ¶ 11. The government stands by the adjusted offense level of 16 as stipulated in the parties' plea agreement and referenced above.

Since Andreu has no known prior convictions both Probation and the government agree that Criminal History Category of I is appropriate, resulting in a Guidelines range of imprisonment between 21 and 27 months.

III.     The Appropriate Sentence

The government respectfully submits that a sentence within the Guidelines range of 21 and 27 months of imprisonment is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). With regard to the nature and circumstances of the offense, the defendant committed this crime over a period of several years. He and his co-conspirators filed dozens of false tax returns, allowing them to steal hundreds of thousands of dollars from the United States. Approximately $464,252 in false refunds were issued to participants of the scheme. Had Andreu and his defendants succeeded with their scheme over $2,145,949, the full amount of false claims, would have been lost. Given the egregious manner in which the defendant continued to fraudulently delve into U.S. Treasury coffers, after multiple notices and in-person warnings, any punishment less than the Guidelines range would embolden others to engage in similar conduct.

The goal of deterrence weighs heavily in favor of a Guidelines sentence. In criminal tax cases, the paramount consideration for the Court at sentencing is "the need to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(3). The introductory commentary to the Guidelines for federal tax offenses emphasizes the need for sentencing courts to consider deterrence when imposing a sentence on tax offenders:

> The federal criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying the Sentencing Guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

Guidelines, Ch. 3, pt. T, intro. cmt.

Statistics support the position that tax crimes are under-prosecuted, and, therefore, require meaningful sentences that promote general deterrence. In fiscal year 2019 the IRS processed more than 253 million tax returns, only 771,095 were audited, which is less than one percent. See IRS Data Book, retrieved at https://www.irs.gov/pub/irs-pdf/p55b.pdf That same year only 2,485 investigations were initiated by IRS Criminal Investigation due to limited resources. See IRS CI Annual Report 2020, retrieved at https://www.irs.gov/pub/irs-pdf/p3583.pdf These statistics justify the policy that "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration" in sentencing. Guidelines, Ch. 3, pt. T, intro. cmt.

Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, the primary consideration of deterrence generally weighs in favor of a sentence of imprisonment. See United States v. Engle, 592 F.3d 495, 502 (4th Cir. 2010). The Sentencing Commission has consistently stated that deterrence should be a primary consideration in tax crimes. U.S. v. Cutler , 530 F.3d 136, 163 (2d Cir. 2008). As Judge Weinstein noted, "Most income tax evasion is undiscovered. To be effective as general deterrence, punishments should lead entrepreneurs considering tax evasion to calculate that they will be punished by incarceration . . . if their cheating is discovered." United States v. Gorodetsky, 288 F.R.D. 248, 249 (E.D.N.Y. 2013).

The real or definite prospect of prison serves as a significant deterrent, particularly when compared with the pre-Guidelines practice where probation, not prison, was the norm. See Guidelines, § 1A1.4(d), intro. cmt.; See also United States v. Morace, 594 F.3d 340,349 (4th Cir. 2010) ("[T]he policy statements issued by the Sentencing Commission make it clear that the Commission views tax evasion as a serious crime and believes that, under the pre-Guidelines practice, too many probationary sentences were imposed for tax crimes."). A sentence of imprisonment to deter would-be tax frauds also protects the public's interest in preserving our federal tax system, which relies on the individual taxpayer's honest self reporting. See United States v. Carlston, 562 F. Supp. 181, 185 (N.D. Cal. 1983) ("Deterrence is important in connection with income tax violations because of our reliance on a system of self-assessment.") (quoting Sentencing the Income Tax Violator, 26 F.R.D. 264 (1961). Without a meaningful prison sentence for Andreu, other tax defiers will continue to flout the law, confident that the reward of cheating the system outweighs the risk of getting caught.

Although application of the U.S. Sentencing Guidelines is no longer mandatory, see United States v. Booker, 543 U.S. 220, 245 (2005), the Guidelines still play a "central role" in the sentencing decision, United States v. Molina-Martinez, 136 S. Ct. 1338, 1345 (2016). The Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence." Id. At 1349. Indeed, in most instances, "the Guidelines are not only the starting point…but also the lodestar." Molina-Martinez, 136 S. Ct at 1346.

Moreover, the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a Guidelines sentence. Anchoring the sentence to the Guidelines range also serves the vital goal of uniformity and fairness in sentencing. The Guidelines range reflects the seriousness of the offense, promotes respect for the law, and provides for just punishment in this case. For all of these reasons the offense is serious and deserving of a Guidelines-range sentence between 21 and 27 months of imprisonment.

IV. Restitution

Under the plea agreement, Andreu has agreed to pay restitution to the United States in the amount of $181,137. The Court should order that such restitution by paid. While the Court can and should consider Andreu's willingness to pay restitution, this factor should not reduce Andreu's sentence below the Sentencing Guidelines range. Put simply, the Defendant should not be able to pay his way out of imprisonment. See United States v. Muffelman, 470 F.3d 33, 40 (1st Cir. 2006)

V. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the Guidelines range of 21 to 27 months, as well as a restitution order in the amount of $181,137 consistent with the parties' plea agreement.

DAVID A. HUBBERT
Acting Assistant Attorney General
U.S. Department of Justice, Tax Division

By: Ann M. Cherry, Trial Attorney

cc: Clerk of the Court;
U.S. Probation Department;
Sam Jacobson, Esq.